UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KURT SCHEUERMAN, SONNY HUYNH, SARA SAFFRAN, BARBARA SAFFRAN, ROBERT VANDERTOORN and DOUGLAS HINTON, on Behalf of Themselves and All Others Similarly Situated, | § § § § § § | Case No. _____ <br><br> CLASS ACTION COMPLAINT <br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, | § § | |
| v. | § § | |
| THE HOME DEPOT, INC., a Delaware corporation, | § § § | |
| Defendant. | § § § | |

## <u>NATURE OF THE ACTION</u>

1.      Home Depot is the world's largest home improvement retailer with annual revenue of approximately $75 billion. Prior to April 2014, unidentified perpetrators penetrated the computer networks of Home Depot.  After the intrusion, and continuing through the beginning of September 2014, these perpetrators monitored and scraped data from Home Depot's computer network that carried and stored the personal financial information of its customers, including Plaintiffs; the data breach (the "Breach") likely includes the point-of-sale

network that processes credit card and bank debit card transactions for most, if not all, Home Depot retail stores in the United States. As a result, the perpetrators compromised personal and/or financial information of hundreds of thousands, if not millions of individuals, information which included financial card numbers, account holders' names, and the city, state, and ZIP code of the Home Depot store where the card was used.  By September 2014, this information began surfacing in online markets that traffic in stolen financial card data, including on "rescator.cc," a website known for trafficking in stolen card data.

## PARTIES

1.     Plaintiff Kurt Scheuerman is a citizen of Montgomery County, Pennsylvania.

2.     Plaintiff Sonny Huynh is a citizen of Winnetka, California.

3.     Plaintiff Sara Saffran is an individual residing in Staten Island, New York.

4.     Plaintiff Barbara Saffran is a  citizen of Lakewood, New Jersey.

5.     Plaintiff Robert Vandertoorn is a citizen of North Bergen, New Jersey.

6.     Plaintiff Douglas Hinton is an individual residing in Waukesha, Wisconsin.  Plaintiff Hinton made numerous transactions at Home Depot using a personally held credit card during the months of May and June of 2014.

7.     Defendant The Home Depot, Inc. (the "Company") is a Delaware corporation, headquartered in Atlanta, Georgia. Home Depot is the world's largest home improvement retailer with more than 1500 stores across North America.

## JURISDICTION AND VENUE

8.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiffs and Defendant are citizens of different states, the amount in controversy exceeds $5,000,000.00, and there are more than 100 putative class members.

9.     This Court has personal jurisdiction over Home Depot because the company maintains its principal place of business in Georgia, regularly conducts business in Georgia, and has sufficient minimum contacts in Georgia. Home Depot intentionally avails itself of this jurisdiction by marketing and selling products from Georgia to millions of consumers nationwide, including in Georgia.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendant's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

11.     According to the National Retail Federation, Home Depot is the fifth largest retailer in the United States behind Walmart, Kroger, Costco, and Target. Home Depot sells merchandise to millions of consumers in the United States.

12.     When consumers make purchases at Home Depot retail stores using credit or debit cards, Home Depot collects information related to that card including the card holder name, the account number, expiration date, card verification value (CVV), and PIN for debit cards. Home Depot stores this information in its point-of-sale system and transmits this information to a third party for completion of the payment. Home Depot also collects and stores customer names, mailing addresses, phone numbers, and email addresses.

13.     While Home Depot's collection of customer information may itself be legal, by collecting and storing such extensive and detailed customer information, Home Depot creates an obligation for itself to use every means available to it to protect this information from falling into the hands of identity thieves and other criminals.

14.     In approximately late April or early May, 2014, unauthorized third parties, commonly referred to as computer hackers, gained access to Home Depot's data network. Between approximately late April or early May, 2014 and through the beginning of September 2014, personal and/or financial information of

hundreds of thousands, if not millions, of consumers stored by Home Depot was compromised.

15.    On September 2, 2014, the first public report of Home Depot's data breach was made – not by Home Depot itself, but by computer security blogger Brian Krebs.

16.    On September 8, 2014, Home Depot, after launching an investigation into the data breach, confirmed both that the breach had taken place and that customers' personal information had indeed been taken. The Company announced that the data breach could have affected customers who shopped at any of its 2,000+ locations in the United States and Canada using a credit or debit card "in 2014, from April on."[1] The Attorneys General for California, Connecticut, Illinois, Iowa, and New York have already launched a joint probe into the data breach.[2]

17.    The personal and financial information of consumers, including plaintiffs and Class members, is valuable.

18.    The FTC warns consumers to pay particular attention to how they keep personally identifying information: Social Security numbers, credit card or

---

[1] http://bits.blogs.nytimes.com/2014/09/08/home-depot-confirms-that-it-was-hacked/?_php=true&_type=blogs&_r=0
[2] http://www.newsweek.com/home-depot-data-breach-could-match-targets-biggest-ever-269286

financial information, and other sensitive data. As the FTC notes, "[t]hat's what thieves use most often to commit fraud or identity theft."

19.    The information stolen from Home Depot, including Plaintiffs' and Class members' financial and personal information, is extremely valuable to thieves. As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."

20.    Personal and financial information such as that stolen in the Home Depot data breach is highly coveted by and a frequent target of hackers. Legitimate organizations and the criminal underground alike recognize the value of such data. Otherwise, they would not pay for it, maintain it, or aggressively seek it. Criminals seek personal and financial information of consumers because they can use biographical data to perpetuate more and larger thefts.

21.    The thieves use the credit card information to create fake credit cards that can be swiped and used to make purchases as if they were the real credit cards. Additionally, the thieves could reproduce stolen debit cards and use them to withdraw cash from ATMs.

22.    The stolen card data being sold on rescator.cc includes both the information needed to fabricate counterfeit cards as well as the legitimate

cardholder's full name and the city, state and ZIP of the Home Depot store from which the card was stolen, allowing for the hackers and/or subsequent purchasers of the information to quickly and accurately identify the Social Security number and date of birth of cardholders, placing their identities at even further risk.

23. These precise kinds of fraudulent transactions have already taken place, including a fraudulent transaction using the credit card information of Plaintiff Hinton, as further described below.

24. On September 8, 2014, one bank reported losing more than $300,000 in two hours to PIN fraud on multiple debit cards that had all recently been used at Home Depot.[3]

25. The malicious software ("malware") used in the attack was a variant of "BlackPOS," a malware strain designed to siphon data from cards when they are swiped at infected point-of-sale systems. Astonishingly, this same malware was utilized in the highly publicized data breach at the retail chain of Target, one of the largest retailer in the United States, that had occurred nine months prior to the breach at Home Depot.

26. Equally troubling is that Home Depot was utilizing Windows XPe, an embedded version of Microsoft's now-retired and unsupported Windows XP

---

[3] *Id.*

operating system, for its POS terminals (as was Target stores at the time of the data breach into its systems).    Information Technologists have loudly criticized the continued use of Windows XPe due to security concerns and its aging state – an OS that has been replaced by Microsoft with three newer versions.   Making matters worse, Windows XPe update support was ended by Microsoft in April 2014.  The "end of support" marks a critical time at which Microsoft stops issuing critical security patches.  Alas, Home Depot has long been aware of these systems issues with Windows XPe and the fact that XP support was ending in April 2014, and had certainly seized by September 2014.  Notably, in November 2013, a well-known systems analysts chastised Home Depot in particular for continuing to use Windows XPe and strongly urged that an upgrade be made in order to address well known security concerns.

27.    A number of retailers, banks and card companies have responded to recent security breaches by adopting the use of microchips in U.S. credit and debit cards to make transactions more secure. Home Depot did not have any such technology in place at any time during the Breach, though it has now announced that it plans to have chip-enabled checkout terminals in all U.S. stores by the end of 2014.

28.   Rather Home Depot took a knowingly dismissive attitude toward ensuring the security of its customers' data.  According to a report by *The New York Times*, those inside Home Depot responsible for cybersecurity warned the Company as far back as 2008 that its network security was underdeveloped and likely easy prey for hackers.  Despite the opinion of experts, Home Depot continued to rely on outdated software, failed to routinely monitor its network that handled customer information for unusual behavior, and performed vulnerability scans irregularly and insufficiently.  Generally, Home Depot failed to meet the industry standards for protecting customer data, even going so far as making off limits dozens of systems that handled customer information to cybersecurity staff that was otherwise responsible for overseeing such systems.  So recalcitrant to correct the situation were the executives of Home Depot responsible for administration and handling of Home Depot's information systems that many employees involved in the deployment and oversight simply left the Company or warned friends to use cash at Home Depot.  By the time the perpetrators had hacked inside Home Depot's network, any belated attempts by Home Depot to increase its security were too late and too ineffective

29.   The Breach was caused and enabled by Defendant's knowing violation of its obligations to abide by best practices and industry standards in

protecting customers' personal information. Home Depot grossly failed to comply with security standards and allowed its customers' financial information to be compromised, all in an effort to save money by cutting corners on security measures that could have prevented or mitigated the Breach that occurred.

30.    Defendant's failure to comply with reasonable security standards provided Home Depot with short-term and fleeting benefits in the form of saving on the costs of compliance, but at the expense and to the severe detriment of its own customers – including Class members here – who have been subject to the Breach or otherwise have had their financial information placed at serious and ongoing risk.

31.    Home Depot allowed widespread and systematic theft of its customers' financial information. Defendant's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customers' financial information.

## PLAINTIFFS' FACTUAL ALLEGATIONS

32.    On March 11, 2014, Plaintiff Kurt Scheuerman caused his debit card to be swiped at a point-of-sale terminal operated by Home Depot at 2385 Cheltenham Avenue, Philadelphia, PA 19150 so that he could complete a purchase from Home Depot.

33.    On May 20, 2014, July 17, 2014 and July 30, 2014, Plaintiff Sonny Huynh caused his credit card to be swiped at a point-of-sale terminal operated by Home Depot at 6345 Varial Ave, Woodland Hills, CA 91367 so that he could complete a purchase from Home Depot.

34.    On August 30, 2014, Plaintiff Sara Saffran caused her credit card to be swiped at a point-of-sale terminal operated by Home Depot at 2750 Veterans Road West, Staten Island, NY 10309, so that she could complete a purchase from Home Depot.

35.    On May 6, 2014, May 29, 2014, and June 2, 2014, Plaintiff Barbara Saffran caused her credit card to be swiped at a point-of-sale terminal operated by Home Depot at 1900 Shorrock Road, Lakewood, NJ 08701, so that she could complete a purchase from Home Depot.

36.    On June 14, 2014 and July 7, 2014, Plaintiff Robert Vandertoorn caused his credit card to be swiped at a point-of-sale terminals operated by Home Depot at 7605 Tonnelle Avenue, North Bergen, NJ 07047 and 1055 Paterson Plank Rd, Secaucus, NJ 07094, respectively, so that he could complete a purchase from Home Depot.

37.    On May 31, 2014 and June 8, 2014, Plaintiff Douglas Hinton caused his credit card to be swiped at a point-of-sale terminal operated by Home Depot at

2320 W Bluemound Rd., Waukesha, WI 53186 so that he could complete purchases from Home Depot.  On August 28, 2014, Plaintiff Hinton was the direct victim of credit card fraud stemming from a fraudulent charge to the credit card that he used during both aforesaid transactions at Home Depot.  Upon information and belief, the personal information and credit card data of Plaintiff Hinton used in this fraudulent charge was obtained as the result of the Home Depot breach.  The credit card charge originated from a South Asia payment gateway service and sought to bill Plaintiff Hinton's credit card over 16,000.00 Indian Rupees.  Plaintiff Hinton was thereafter subjected to expenses and the denial of the use of a credit card he routinely used as a result of the fraud.

38.    The Plaintiffs believed that Home Depot would maintain the personal and financial information contained on the financial cards used in their Home Depot purchases in a reasonably secure manner and provided their card to Home Depot on that basis. Had Plaintiffs known that Home Depot would not maintain their information in a reasonably secure manner, they would not have allowed their individual cards card to be swiped at Home Depot's point-of-sale terminal.

39.    Plaintiffs' personal information associated with each of their debit or credit cards was compromised in and as a result of the Home Depot data breach. Plaintiffs were harmed by having each of their financial and personal information

compromised and face the imminent and certainly impending threat of future additional harm from the increased threat of identity theft and fraud due to each of their financial and personal information being sold on the Internet black market and/or misused by criminals.

## CLASS ACTION ALLEGATIONS

40.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring their claims that Home Depot violated state data breach statutes (Count I) on behalf of separate statewide classes in and under the respective data breach statutes of the States of Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin and Wyoming, and the District of Columbia. These classes are defined as follows:

> **Statewide Data Breach Statute Classes:**
>
> All residents of [name of State or District of Columbia] whose credit or debit card information and/or whose personal information was compromised as a result of the Home Depot data breach first publicly reported on September 2, 2014.

41.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring separate claims for negligence (Count II), breach of implied contract (Count III), bailment (Count IV) and unjust enrichment (Count V) on behalf of the respective statewide classes in and under the laws of each respective State of the United States and the District of Columbia as set forth in Counts II, III, IV, and V. These classes for each of the foregoing claims are defined as follows:

**Statewide [Negligence, Breach of Implied Contract, Bailment or Unjust Enrichment] Class:**

All residents of [name of State or District of Columbia] whose credit or debit card information and/or whose personal information was compromised as a result of the Home Depot data breach first publicly reported on September 2, 2014.

42.    Excluded from each of the above Classes are The Home Depot, Inc., including any entity in which Home Depot has a controlling interest, is a parent or subsidiary, or which is controlled by Home Depot, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Home Depot. Also excluded are the judges and court personnel in this case and any members of their immediate families.

43.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class wide

basis using the same exclusive and common evidence as would be used to prove those elements in individual actions alleging the same claims.

44.     All members of the proposed Classes are readily ascertainable. Home Depot has access to addresses and other contact information for millions of members of the Classes, which can be used for providing notice to many Class members.

45.     Numerosity. Plaintiffs do not know the exact number of Class members but believe that the Class comprises hundreds of thousands if not millions of consumers throughout these United States. As such, Class members are so numerous that joinder of all members is impracticable.

46.     Commonality and predominance. Well-defined, nearly identical legal or factual questions affect all Class members. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

        a.     Whether there was an unauthorized disclosure by Defendant of Class members' personal and/or financial information;

        b.     Whether Defendant enabled an unauthorized disclosure of Class members' personal and/or financial information;

c.      Whether Defendant misrepresented the safety and security of Class members' personal and/or financial information maintained by Defendant;

d.      Whether Defendant implemented and maintained reasonable procedures and practices appropriate for maintaining the safety and security of Class members' personal and/or financial information;

e.      When Defendant became aware of an unauthorized disclosure of Class members' personal and/or financial information;

f.      Whether Defendant unreasonably delayed notifying Class members of an unauthorized disclosure of Class members' personal and/or financial information;

g.      Whether Defendant intentionally delayed notifying Class members of an unauthorized disclosure of Class members' personal and/or financial information;

h.      Whether Defendant's conduct was negligent;

i.      Whether Defendant's conduct was deceptive;

j.      Whether Defendant's conduct was knowing, willful, intentional, and/or malicious;

k.      Whether Plaintiffs and the Class are entitled to damages, civil

penalties, punitive damages, and/or injunctive relief.

47.     Typicality. Plaintiffs' claims are typical of the claims of the Class.

Plaintiffs and all Class members were injured through Home Depot's misconduct

described above and assert the same claims for relief. The same events and conduct

that give rise to Plaintiffs' claims are identical to those that give rise to the claims

of every other Class member because each Plaintiff and Class member is a person

that has suffered harm as a direct result of the same conduct (and omissions of

material facts) engaged in by Home Depot and resulting in the Home Depot data

breach.

48.     Adequacy. Plaintiffs will fairly and adequately protect Class

members' interests. Plaintiffs have no interests antagonistic to Class members'

interests, and Plaintiffs have retained counsel that has considerable experience and

success in prosecuting complex class action and consumer protection cases.

49.     Superiority. A class action is superior to all other available methods

for fairly and efficiently adjudicating the claims of Plaintiffs and the Class

members. Plaintiffs and the Class members have been harmed by Home Depot's

wrongful actions and inaction. Litigating this case as a class action will reduce the

possibility of repetitious litigation relating to Home Depot's wrongful actions and inaction.

50.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. There is no special interest in the members of the Class individually controlling the prosecution or separate actions. The loss of money and other harm sustained by many individual Class members will not be large enough to justify individual actions, especially in proportion to the significant costs and expenses necessary to prosecute this action. The expense and burden of individual litigation makes it impossible for many members of the Class individually to address the wrongs done to them. Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against Home Depot. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore, Home Depot transacts substantial business in and perpetuated its unlawful conduct from Georgia. Home

Depot will not be prejudiced or inconvenienced by the maintenance of this class action in this forum.

51.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(a) and (b)(3). The above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

52.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Home Depot has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

53.    The expense and burden of litigation will substantially impair the ability of Plaintiffs and Class members to pursue individual lawsuits to vindicate their rights. Absent a class action, Home Depot will retain the benefits of its wrongdoing despite its serious violations of the law.

## COUNT I
## VIOLATIONS OF STATE DATA BREACH STATUTES
**(On behalf of Plaintiffs and the separate Statewide Data Breach Statute Classes.)**

54.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

55. Legislatures in the states and jurisdictions listed below have enacted data breach statutes. These statutes generally require that any person or business conducting business within the state that owns or licenses computerized data that includes personal information shall disclose any breach of the security of the system to any resident of the state whose personal information was acquired by an unauthorized person, and further require that the disclosure of the breach be made in the most expedient time possible and without unreasonable delay.

56. The Home Depot data breach constitutes a breach of the security system of Home Depot within the meaning of the below state data breach statutes and the data breached is protected and covered by the below data breach statutes.

57. Plaintiffs' and Class members' names, credit and debit card numbers, card expiration dates, CVVs addresses, phone numbers and email addresses constitute personal information under and subject to the below state data breach statutes.

58. Home Depot unreasonably delayed in informing the public, including Plaintiffs and members of the statewide Data Breach Statute Classes ("Class," as used in this Count I), about the breach of security of Plaintiffs' and Class members' confidential and non-public personal information after Home Depot knew or should have known that the data breach had occurred.

59.     Home Depot failed to disclose to Plaintiffs and Class members without unreasonable delay and in the most expedient time possible, the breach of security of Plaintiffs' and Class members' personal and financial information when Home Depot knew or reasonably believed such information had been compromised.

60.     Plaintiffs and members of the Class suffered harm directly resulting from Home Depot's failure to provide and the delay in providing Plaintiffs and Class members with timely and accurate notice as required by the below state data breach statutes. Plaintiffs suffered the damages alleged above as a direct result of Home Depot's delay in providing timely and accurate notice of the data breach.

61.     Had Home Depot provided timely and accurate notice of the Home Depot data breach, Plaintiffs and Class members would have been able to avoid and/or attempt to ameliorate or mitigate the damages and harm resulting in the unreasonable delay by Home Depot in providing notice. Plaintiffs and Class members could have avoided making credit or debit card purchases at Home Depot stores, could have avoided shopping at Home Depot stores at all, and could have contacted their banks to cancel their cards, or could otherwise have tried to avoid the harm caused by Home Depot's delay in providing timely and accurate notice.

62.    Home Depot's failure to provide timely and accurate notice of the Home Depot data breach violated the following state data breach statutes:

a.    Alaska Stat. Ann. § 45.48.010(a), et seq.;

b.    Ark. Code Ann. § 4-110-105(a), et seq.;

c.    Cal. Civ. Code § 1798.83(a), et seq.;

d.    Colo. Rev. Stat. Ann § 6-1-716(2), et seq.;

e.    Conn. Gen. Stat. Ann. § 36a-701b(b), et seq.;

f.    Del. Code Ann. Tit. 6 § 12B-102(a), et seq.;

g.    D.C. Code § 28-3852(a), et seq.;

h.    Fla. Stat. Ann. § 501.171(4), et seq.;

i.    Ga. Code Ann. § 10-1-912(a), et seq.;

j.    Haw. Rev. Stat. § 487N-2(a), et seq.;

k.    Idaho Code Ann. § 28-51-105(1), et seq.;

l.    Ill. Comp. Stat. Ann. 530/10(a), et seq.;

m.   Iowa Code Ann. § 715C.2(1), et seq.;

n.    Kan. Stat. Ann. § 50-7a02(a), et seq.;

o.    Ky. Rev. Stat. Ann. § 365.732(2), et seq.;

p.    La. Rev. Stat. Ann. § 51:3074(A), et seq.;

q.    Md. Code Ann., Commercial Law § 14-3504(b), et seq.;

r.  Mass. Gen. Laws Ann. Ch. 93H § 3(a), et seq.;

s.  Mich. Comp. Laws Ann. § 445.72(1), et seq.;

t.  Minn. Stat. Ann. § 325E.61(1)(a), et seq.;

u.  Mont. Code Ann. § 30-14-1704(1), et seq.;

v.  Neb. Rev. Stat. Ann. § 87-803(1), et seq.;

w.  Nev. Rev. Stat. Ann. § 603A.220(1), et seq.;

x.  N.H. Rev. Stat. Ann. § 359-C:20(1)(a), et seq.;

y.  N.J. Stat. Ann. § 56:8-163(a), et seq.;

z.  N.C. Gen. Stat. Ann. § 75-65(a), et seq.;

aa. N.D. Cent. Code Ann. § 51-30-02, et seq.;

bb. Okla. Stat. Ann. Tit. 24 § 163(A), et seq.;

cc. Or. Rev. Stat. Ann. § 646A.604(1), et seq.;

dd. Pa. 73 Stat. § 2301, et sq.;

ee. R.I. Gen. Laws Ann. § 11-49.2-3(a), et seq.;

ff.  S.C. Code Ann. § 39-1-90(A), et seq.;

gg. Tenn. Code Ann. § 47-18-2107(b), et seq.;

hh. Tex. Bus. & Com. Code Ann. § 521.053(b), et seq.;

ii.  Utah Code Ann. § 13-44-202(1), et seq.;

jj.  Va. Code. Ann. § 18.2-186.6(B), et seq.;

kk. Wash. Rev. Code Ann. § 19.255.010(1), et seq.;

ll.  Wis. Stat. Ann. § 134.98(2), et seq.; and

mm.    Wyo. Stat. Ann. § 40-12-502(a), et seq.

63.    Plaintiffs and members of each of the statewide Data Breach Statute Classes seek all remedies available under their respective state data breach statutes, including but not limited to a) damages suffered by Plaintiffs and Class members as alleged above, b) equitable relief, including injunctive relief, and c) reasonable attorney fees and costs, as provided by law.

## COUNT II
## NEGLIGENCE
**(On behalf of Plaintiffs and the separate Statewide Negligence Classes.)**

64.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

65.    Home Depot came into possession, custody, and/or control of personal and/or financial information of Plaintiffs and Class members.

66.    Home Depot owed a duty to Plaintiffs and members of the Statewide Negligence Classes ("Class" as used in this Count II) to exercise reasonable care in safeguarding and securing the personal and/or financial information of Plaintiffs and Class members in its possession, custody, and/or control.

67.    Home Depot had a duty to exercise reasonable care in implementing and maintaining reasonable procedures and practices appropriate for maintaining the safety and security of Plaintiffs' and Class members' personal and/or financial information in its possession, custody, and/or control.

68.    Home Depot had a duty to exercise reasonable care in timely notifying Plaintiffs and Class members of an unauthorized disclosure of Plaintiffs' and Class members' personal and/or financial information in its possession, custody, and/or control.

69.    Home Depot, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in safeguarding and securing the personal and/or financial information of Plaintiffs and Class members in its possession, custody, and/or control.

70.    Home Depot, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in implementing and maintaining reasonable procedures and practices appropriate for maintaining the safety and security of Plaintiffs' and Class members' personal and/or financial information in its possession, custody, and/or control.

71.   Home Depot, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in timely notifying Plaintiffs and Class members of an unauthorized disclosure of Plaintiffs' and Class members' personal and/or financial information in its possession, custody, and/or control.

72.   Home Depot's negligent and wrongful breach of duties it owed to Plaintiffs and Class members proximately caused an unauthorized disclosure of Plaintiffs' and Class members' personal and/or financial information in its possession, custody, and/or control.

73.   As a direct and proximate result of Home Depot's negligent conduct, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiffs and the separate Statewide Breach of Implied Contract Classes.)

74.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

75.   When Plaintiffs and members of the Breach of Implied Contract Classes ("Class" as used in this Count III) provided their financial and personal information to Home Depot in order to make purchases at Home Depot stores,

Plaintiffs and members of the Class entered into implied contracts with Home Depot pursuant to which Home Depot agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class members that their data had been breached and compromised.

76.    Home Depot solicited and invited Plaintiffs and members of the Class to purchase products at Home Depot stores using their credit or debit cards. Plaintiffs and members of the Class accepted Home Depot's offers and used their credit or debit cards to purchase products at Home Depot stores during the period of the Home Depot data breach.

77.    Each purchase made at a Home Depot store by Plaintiffs and members of the Class using their credit or debit card was made pursuant to the mutually agreed upon implied contract with Home Depot under which Home Depot agreed to safeguard and protect Plaintiffs' and Class members' personal and financial information, including all information contained in the magnetic stripe of Plaintiffs' and Class members' credit or debit cards, and to timely and accurately notify them that such information was compromised and breached.

78.    Plaintiffs and Class members would not have provided and entrusted their financial and personal information, including all information contained in the magnetic stripes of their credit and debit cards, to Home Depot in order to purchase

products at Home Depot stores in the absence of the implied contract between them and Home Depot.

79.    Plaintiffs and members of the Class fully performed their obligations under the implied contracts with Home Depot.

80.    Home Depot breached the implied contracts it made with Plaintiffs and Class members by failing to safeguard and protect the personal and financial information of Plaintiffs and members of the Class and by failing to provide timely and accurate notice to them that their personal and financial information was compromised in and as a result of Home Depot data breach.

81.    The losses and damages sustained by Plaintiffs and Class members as described herein were the direct and proximate result of Home Depot's breaches of the implied contracts between Home Depot and Plaintiffs and members of the Class.

82.    Wherefore, Plaintiffs pray for relief as set forth below.

**COUNT IV**
**BAILMENT**
**(On behalf of Plaintiffs and the separate Statewide Bailment Classes.)**

83.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

84.    Plaintiffs and members of the separate Statewide Bailment Classes ("Class" as used in this Count IV) delivered their personal and financial information, including the information contained on the magnetic stripes of their credit or debit cards, to Home Depot for the exclusive purpose of making purchases from Home Depot at Home Depot stores.

85.    In delivering their personal and financial information to Home Depot, Plaintiffs and Class members intended and understood that Home Depot would adequately safeguard their personal and financial information.

86.    Home Depot accepted possession of Plaintiffs' and Class members' personal and financial information for the purpose of accepting payment for goods purchased by Plaintiffs and members of the Class at Home Depot stores.

87.    By accepting possession of Plaintiffs' and Class members' personal and financial information, Home Depot understood that Plaintiffs and Class members expected Home Depot to adequately safeguard their personal and financial information. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

88.    During the bailment (or deposit), Home Depot owed a duty to Plaintiffs and Class members to exercise reasonable care, diligence and prudence in protecting their personal and financial information.

89.     Home Depot breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class members' personal and financial information, resulting in the unlawful and unauthorized access to and misuse of Plaintiffs' and Class members' personal and financial information.

90.     Home Depot further breached its duty to safeguard Plaintiffs' and Class members' personal and financial information by failing to timely and accurately notify them that their information had been compromised as a result of the Home Depot data breach.

91.     Home Depot failed to return, purge or delete the personal and financial information of Plaintiffs and members of the Class at the conclusion of the bailment (or deposit) and within the time limits allowed by law.

92.     As a direct and proximate result of Home Depot's breach of its duty, Plaintiffs and Class members suffered consequential damages that were reasonably foreseeable to Home Depot, including but not limited to the damages set forth above.

93.     As a direct and proximate result of Home Depot's breach of its duty, the personal and financial information of Plaintiffs and Class members entrusted to Home Depot during the bailment (or deposit) was damaged and its value diminished.

94.     Wherefore, Plaintiffs pray for relief as set forth below.

**COUNT V**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the separate Statewide Unjust Enrichment**
**Classes.)**

95.     Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

96.     Plaintiffs and members of the separate Statewide Unjust Enrichment Classes ("Class" as used in this Count V) conferred a monetary benefit on Home Depot in the form of monies paid for the purchase of goods from Home Depot during the period of the Home Depot data breach.

97.     Home Depot appreciates or has knowledge of the benefits conferred directly upon it by Plaintiffs and members of the Class.

98.     The monies paid for the purchase of goods by Plaintiffs and members of the Class to Home Depot during the period of the Home Depot data breach were supposed to be used by Home Depot, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiffs and members of the Class.

99.     Home Depot failed to provide reasonable security, safeguards and protection to the personal and financial information of Plaintiffs and Class members and as a result, Plaintiffs and Class members overpaid Home Depot for

the goods purchased through use of their credit and debit cards during the period of the Home Depot data breach.

100.   Under principles of equity and good conscience, Home Depot should not be permitted to retain the money belonging to Plaintiffs and members of the Class, because Home Depot failed to provide adequate safeguards and security measures to protect Plaintiffs' and Class members' personal and financial information that they paid for but did not receive.

101.   As a result of Home Depot's conduct as set forth in this Complaint, Plaintiffs and members of the Class suffered damages and losses as stated above, including monies paid for Home Depot products that Plaintiffs and Class members would not have purchased had Home Depot disclosed the material fact that it lacked adequate measures to safeguard customers' data and had Home Depot provided timely and accurate notice of the data breach, and including the difference between the price they paid for Home Depot's goods as promised and the actual diminished value of its goods and services.

102.   Plaintiffs and the Class have conferred directly upon Home Depot an economic benefit in the nature of monies received and profits resulting from sales and unlawful overcharges to the economic detriment of Plaintiffs and the Class.

103.   The economic benefit, including the monies paid and the overcharges and profits derived by Home Depot and paid by Plaintiffs and members of the Class, is a direct and proximate result of Home Depot's unlawful practices as set forth in this Complaint.

104.   The financial benefits derived by Home Depot rightfully belong to Plaintiffs and members of the Class.

105.   It would be inequitable under established unjust enrichment principles in the District of Columbia and all of the 50 states for Home Depot to be permitted to retain any of the financial benefits, monies, profits and overcharges derived from Home Depot's unlawful conduct as set forth in this Complaint.

106.   Home Depot should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by Home Depot.

107.   A constructive trust should be imposed upon all unlawful or inequitable sums received by Home Depot traceable to Plaintiffs and the Class.

108.   Plaintiffs and the Class have no adequate remedy at law.

109.   Wherefore, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

A.     On behalf of themselves and the Classes set forth above, Plaintiffs request the Court order relief and enter judgment against Defendant and enter an order:

B.     certifying this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and, pursuant to Fed. R. Civ. P. 23(g), appoint the named Plaintiffs to be Class representatives and their undersigned counsel to be Class counsel;

C.     requiring Defendant to make whole any losses suffered by Plaintiffs and Class members;

D.     enjoining Defendant from further engaging in the unlawful conduct complained of herein;

E.     awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages, restitution and disgorgement;

F.     awarding pre-judgment and post-judgment interest;

G.     requiring Defendant to pay for notifying the Class of the pendency of this action;

H.     establishing a fluid recovery fund for distribution of unclaimed funds;

I.     requiring Defendant to pay Plaintiffs and Class members reasonable attorneys' fees, expenses, and the costs of this action; and

J.    providing all other and further relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 23, 2014      Respectfully submitted:

s/ Lauren S. Antonino, Esq.
Ga. Bar No. 652408
Attorney for Plaintiffs
The Antonino Firm LLC
Six Concourse Parkway
Suite 2920
Atlanta, Georgia  30328
Tel:  770-408-1229
Fax: 866-372-5586
lauren@antoninofirm.com

and

Laurence M. Rosen, Esq.
Phillip Kim, Esq.
THE ROSEN LAW FIRM, P.A.
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com

*Counsel to Plaintiffs*